**CHESAPEAKE AND POTOMAC TELE-
PHONE COMPANY OF MARYLAND,
Defendant-Third Party Plaintiff Below,
Appellant,**

v.

**CHESAPEAKE UTILITIES CORPORA-
TION, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted Jan. 12, 1981.

Decided Sept. 10, 1981.

Somers S. Price (argued) of Potter, Anderson & Corroon, Wilmington, for appellant.

Douglas B. Catts (argued) of Schmittinger & Rodriguez, P. A., Dover, for appellee.

Before HERRMANN, C. J., QUILLEN and HORSEY, JJ.

HORSEY, Justice:

This interlocutory appeal primarily concerns the duties, for purposes of tort liability, of an employer of an independent contractor to the latter's employees under Maryland law.

Chesapeake and Potomac Telephone Company of Maryland, a Maryland corporation,[1] contracted with Teal Construction, Inc., a Delaware corporation, for Teal to perform certain underground conduit and manhole construction work along West Isabella Street in Salisbury, Maryland in late 1969. Chesapeake Utilities Corporation, a Delaware corporation,[2] was the owner of an underground four inch gas main that ran down Isabella Street on the other side of the street from Teal's construction work. In March, 1970, while construction was in progress, an explosion occurred in a completed manhole causing injuries to two of Teal's employees, John Hopkins and Joseph Martinowski, Delaware residents. Hopkins

---

1. Chesapeake and Potomac Telephone Company of Maryland is hereafter sometimes referred to as "C&P Telephone" or "Telephone Co."

2. Chesapeake Utilities Corporation is hereafter sometimes referred to as "Gas Co." or "Utilities Co."

and Martinowski[3] filed in Superior Court a personal injury action for negligence against Gas Co. Gas Co. then asserted a third party claim for contribution against Telephone Co. and Teal as alleged joint tortfeasors. Later, Gas Co. abandoned its claim over against Teal.[4]

The appeal solely relates to Gas Co.'s third party claim against C&P Telephone for contribution.[5] The theory of Gas Co.'s claim is that C&P Telephone, as well as Gas Co., was guilty of negligence through breach of certain duties Telephone Co. allegedly owed plaintiffs, and that such negligence (along with Gas Co.'s) was a proximate cause of plaintiffs' injuries.

The questions certified for appeal concern the correctness of (1) Superior Court's denial of Telephone Co.'s motion for a directed verdict made at the close of evidence; and (2) the jury verdict and judgment finding Telephone Co. to be a joint tortfeasor with Gas Co. and liable in negligence to plaintiffs "to the extent of 70 percent of the amount ultimately determined to be their reasonable damages for personal injuries resulting from the gas explosion." This interlocutory appeal, accepted April 21, 1980, is interlocutory only in that there remains to be tried below the issue of the reasonableness of Gas Co.'s settlement with plaintiffs for purposes of determining Telephone Co's contribution to liability and damages.

3. John Hopkins and Joseph Martinowski are sometimes hereafter referred to as "plaintiffs".

4. For other reported decisions involving the parties and this accident, *see Hopkins v. Chesapeake Utilities Corp.,* Del.Super., 290 A.2d 4 (1972); *Chesapeake Utilities Corp. v. Chesapeake & Potomac Telephone Co. of Maryland,* Del.Super., 401 A.2d 101 (1979).

5. Plaintiffs' claims against Gas Co. were severed from Gas Co.'s third party claims for contribution; and the third party claims were then stayed pending disposition of plaintiffs' claims against Gas Co. In 1975 Gas Co., after admitting liability to plaintiffs, settled plaintiffs' claims against Gas Co. for about $150,000, and plaintiffs' suit against Gas Co. was dismissed. In 1976, Gas Co.'s claim over against Telephone Co. and Teal resumed. Gas Co. then dismissed with prejudice its claim over against

Telephone Co.'s appeal of the verdict and judgment is limited to alleged legal error in the Trial Court's jury instructions as to Telephone Co.'s duties to plaintiffs under the law of negligence.

Telephone Co.'s motion for a directed verdict contested each of Gas Co.'s numerous allegations as to Telephone Co.'s negligence, including the following key averments:

A. that Telephone Co. failed to provide Teal's employees, including plaintiffs, with a safe place to work;

B. assuming Teal to be an independent contractor (as the jury found), that Telephone Co. was nevertheless liable for Teal's negligence under each of the following Restatement of Torts exceptions to the common law independent contractor rule (exonerating an employer from liability for the negligence of its independent contractor-employee):

B–1. the work contracted to Teal was inherently dangerous or dangerous in the absence of special precaution;

B–2. failure of Telephone Co. to exercise control over matters as to which it had retained some control;

B–3. failure of Telephone Co. to recognize a commonly known danger at the construction site and to take appropriate action;

B–4. failure of Telephone Co. to halt Teal's operations or to remove danger after becoming aware that

Teal as controlled by workmen's compensation law that barred plaintiffs from suing their employer, Teal. The Court later ruled that Maryland law controlled the tort aspects of Gas Co.'s claim but that Delaware law governed its contract aspects. The Court also ruled that the reasonableness of Gas Co.'s settlement with plaintiffs would not be presumed and that Gas Co. had the burden of establishing reasonableness. The Court then granted Gas Co.'s motion for separate trials of the issues of Telephone Co.'s liability for contribution and the reasonableness of Gas Co.'s settlement with plaintiffs. Gas Co.'s claim against Telephone Co. then proceeded to trial in February 1980 as to the issue of Telephone Co.'s liability for contribution as a joint tortfeasor and percentage thereof.

Teal's workmen were creating a dangerous situation.

C. that Telephone Co. was guilty of negligence through breach of unspecified duties, contractual and assumed.

The Trial Court summarily denied Telephone Co.'s motion for a directed verdict as to all issues raised. In a bench ruling, the Court stated:

"THE COURT: It seems to me that of all the issues raised; the one on special dangers does call for the Court to make a preliminary or threshold decision. In that respect I'm not persuaded that it ends with the notion that a manhole is not inherently dangerous or that there is no special danger about a manhole.

I think we are concerned in this case, as in all cases, with the particular facts of the case. And here we are dealing with a manhole that was one of several along a street in which there were gas mains nearby, and clearly designated, which I suggest could be looked upon as special dangers or inherently dangerous. Therefore, I think it applies in this case.

As to all of the other issues that were raised, some of which, as a trier of fact, might be easily disposed of, others not so easily, it seems to me that none of them present themselves as issues that can be legally determined in advance, and that they lend themselves more appropriately to a decision by the jury. So your motions on all of the various points raised, Mr. Price, are denied."

Following the jury charge, Telephone Co. took exception to all instructions as to its liability based on either its negligence or Teal's conduct.

We find that Telephone Co. was entitled to a directed verdict as to issues B–3 and B–4 above. We also find the Trial Court to have erred in its instruction as to issue C above (charging Telephone Co. with negligence through breach of unspecified as-

sumed duties). Therefore, we must reverse and remand for a new trial.

Rather than taking up only the issues requiring reversal, we discuss seriatim each of the key directed verdict issues.* We do so because of their interrelationship and for guidance in the event of a new trial. This, in turn, calls for a more lengthy recital of the facts than in the normal appeal.

I

In a pretrial statement, the parties had stipulated to the following admitted facts: (1) that combustible gas in the manhole, known as manhole H, was "at least one of the proximate causes of the explosion"; (2) that the gas was a natural gas of Gas Co.; (3) that the gas had "leaked" from Gas Co.'s main that lay between 25 and 30 feet away across the street; (4) that the gas had "seeped" into the completed manhole in which plaintiffs were working; (5) that the negligence of Gas Co. was "at least one of the direct and proximate causes of the gas explosion"; (6) that the explosion occurred when Hopkins lit a cigarette while in the manhole with Martinowski and the spark ignited Gas Co.'s natural gas that had seeped into the manhole; (7) that neither plaintiffs, Teal, Telephone Co. nor Gas Co. was aware, before the explosion, that gas was present in the manhole; (8) that had the manhole been tested the presence of natural gas would have been detected; and (9) that although the contract between Telephone Co. and Teal "required both vapor testing and ventilation of the Manhole by someone before it was initially entered for the day by workmen, neither vapor testing nor ventilation was conducted before [plaintiffs] entered the Manhole." (underlining added).

Other facts, largely undisputed,[6] are: that Telephone Co. assigned one employee to the job on a full-time basis, an "inspector", Robert Money. Money's immediate

---

* Note: The Opinion is subdivided into sections lettered to correspond with each of the lettered key averments.

6. To the extent we find any conflict in the evidence, and there is little, we resolve the conflict against Telephone Co., the moving party on the directed verdict motion. *Ebersole v. Lowengrub*, Del.Supr., 208 A.2d 495 (1965).

superior was a Telephone Co. construction foreman, Walter Horsman, who made only periodic visits to the construction site. Horsman's superior in Telephone Co., Richard Grubb, project manager, supplied both Money and Horsman with a set of the construction plans but did not provide either of them with a copy of the contract documents. And neither Money nor Horsman was informed of the contract's provisions as to "Safety Practices" relating to the dangers of combustible gas "when working in or around completed manholes."[7] Further, neither money nor Horsman was informed, or aware, of the fact that the contract documents also included the "Bell System Practices" as to precautions to be taken at manholes for combustible gas.[8]

The construction plans (prepared by Telephone Co. for Teal's use) showed the presence of a four inch gas main on the opposite side of West Isabella Street and about 25 to 30 feet from the construction work. The gas main's location in the street bed had also been staked and marked at the site by a Gas Co. representative.

Telephone Co. had provided Money with a gas vapor tester which, according to Horsman, was to be available for Teal's men and "at their disposal." But Money's understanding was that the vapor test was for his personal use and only for Teal's use "if the contractor (Teal) requested it." Money kept the vapor tester in his truck at the job site but conceded that he never told Teal's men that he had a vapor tester in his truck. According to Grubb, Telephone Co.'s gas detection equipment was only to be used by Telephone Co. personnel. Neither Grubb nor Horsman had any discussions with Money about safety practices on the Teal job before the explosion.

Teal had a policy, but no rule, against smoking in manholes. But Teal's job superintendent, William Godwin, didn't think that newly-completed manholes required testing for gas; and Godwin had never seen or used a vapor tester or ventilating equipment in prior manhole construction work.

Teal provided Godwin with the construction plans but not the contract. Godwin, like Money, did not know that there were any provisions in the contract that required vapor testing of manholes before entry and ventilation. Teal had no vapor tester or ventilating equipment on the job; and Teal did not know, until after the explosion, that Money had a vapor tester available in his truck daily for use at the job site. Godwin and Money had frequent, almost daily, conversations on the job but never before the explosion discussed manhole safety procedures as to combustible gas.

Money was aware of the danger of gas in manholes; was familiar with Telephone Co.'s manhole safety practices; and had been trained to test for gas in manholes before entry. As a result, Money made it a personal practice of never entering manholes before testing for gas. Further, Money knew that there was a gas main within the bed of West Isabella Street in the work area. And only several days before the explosion, Money had tested manhole H for gas before entering it and had found none. However, on the day of the explosion, Money had not tested manhole H for gas; and when plaintiffs entered manhole H, Money was some 600 feet away at another location on the job site, which covered a distance of two miles.

Money's understanding of his duties as "inspector" was: that his responsibilities were limited to seeing that Teal performed its work according to the construction plans; and that since he had no authority over Teal's employees' work performance, he had no responsibility for their safety.

Grubb confirmed that Money's principal responsibility was to see that Teal's construction was in accordance with the work plans. Nevertheless, Grubb conceded that if Money observed Teal's employees entering a manhole without first testing it for gas, Money should have advised them against it and so informed Teal's foreman. According to Grubb, Money was supposed

---

7. See page 320 below for the text thereof.

8. See pages 320, 321 below, for the text thereof.

to be familiar with the Bell System Practices as to manhole testing for gas and ventilation. However, Grubb never specifically instructed Money to see that Teal's employees complied with the Bell System Practices as to manhole safety procedures.

Before the explosion, Money acknowledged seeing Teal's employees entering completed manholes without first testing for gas; and Money noted that Teal's employees never tested for gas before entering manholes. But Money never warned Teal's employees of the danger of gas in manholes; never attempted to prevent Teal's employees from entering the manholes before testing for gas; and never cautioned Teal's employees against lighting cigarettes or smoking in manholes. Money did not do so because, in his words, he "never had any responsibility for the safety of the contractor."

According to Horsman, as well as Grubb, Money was expected to report any manhole safety violations by Teal's employees to Teal's foreman or to Horsman; but Money never did. Had Money done so, Horsman stated that he would have brought Teal's safety violations to the attention of Teal's foreman. Horsman understood his duty with respect to safety procedures not complied with by Teal was to "suggest" compliance. If that failed, Horsman testified that he lacked authority to halt Teal's operations; that he would not have done so without instructions from his superiors; and that he had never faced such a problem before.

Hopkins was on his first construction job and the explosion occurred on his second day at work. Neither Hopkins nor Martinowski had any prior experience in manhole work; and neither had received any instructions concerning manhole safety. Hopkins had smoked half a pack of cigarettes the first day on the job and had not been told either that a gas main was near the manhole or "anything" about a vapor tester or ventilating equipment. Hopkins did not recall speaking to anyone from Telephone Co. about safety.

The contract between Telephone Co. and Teal included a statement of "General Conditions" applicable to "UNDERGROUND CONDUIT AND MANHOLE CONSTRUCTION AND REPAIRING WORK", Article XVII of which was titled, "Safety Practices". Paragraph 1 thereof provided:

"1. CONTRACTOR shall comply with all recognized Safety Practices, particularly when working in or around completed manholes. No manhole shall be entered by any workman without first testing for the presence of combustible gas using an approved Vapor Tester to be furnished by TELEPHONE COMPANY. These tests shall continue at intervals throughout the working period as provided in the Bell System Practices."

The contract documents also included the "Bell System Practices" for "Testing and Ventilating Manholes"—intended for the purpose of determining "if combustible gas is present." Paragraphs 2 and 3 thereof, captioned "PRECAUTIONS AT MANHOLES" provided, in part:

"2.01 Never enter a manhole, even momentarily, until it has been tested for combustible gas and then power ventilated for a minimum of 2 minutes with the outlet damper fully open and the blower operating at maximum rated speed.

2.02 No open flame, torch, lighted cigar, cigarette, or pipe shall be brought near an open manhole, into a covering or tent over an open manhole, nor taken into a manhole even though tests indicate the atmosphere is free of combustible gas. Under no circumstances should a cigarette lighter or other item that produces a hot spark be operated in a manhole.

\* \* \* \* \* \*

3.01 Every manhole opened for the first time during the day or reopened after having been closed for any period of time shall be tested to determine whether combustible gas is present. The em-

ployee shall assure himself that the gas indicator is in good working order before a test is made. The B Gas Test Kit (Section 081–700–120) shall be used in testing the instrument. The gas indicator should be tested at least once a day while it is being used. Never check the operation of a gas indicator by sampling fumes from a tank or can containing gasoline.

3.02 The initial manhole test shall be made immediately after the manhole cover is removed and before the manhole is ventilated.

Testing Procedure

3.03 A test for combustible gas shall be made as outlined in (1) through (6). * * *

3.04 If the test indicates that the atmosphere is satisfactory, the manhole shall be ventilated before it is entered using a power blower having a capacity of 500 cfm or more for a minimum of 2 minutes. It shall be operated outside the manhole tent or covering at all times. The blower must be kept in operation during the entire time that work is being done in the manhole. During wiping operations, the immediate work area may be shielded from direct air circulation by using a tarpaulin. Place blower intake away from traffic to avoid blowing exhaust fumes from passing cars and trucks into manhole.

3.06 Additional tests shall be made as follows:

* * * * * *

(b) After entering the manhole make tests for gas initially by probing in the area of all duct entrances and then generally throughout the manhole. The gas indicator may be used in the manhole. Before entering the manhole . . . ."

After the explosion, Telephone Co. provided Money with ventilating equipment in addition to the vapor tester. Telephone Co. also instructed Money to adopt a daily practice of checking all manholes for gas vapors every morning and ventilating them,. as needed, before entry by Teal's men. However, Money continued the practice of keeping the vapor tester and ventilating equipment under his control at all times. Money would not let Teal's men borrow the equipment to use themselves and Money performed all testing and ventilating of manholes.

## II

### A

■ We first take up key averment "A" (see page 4) and Telephone Co.'s assertion that the Trial Court's refusal to direct a verdict in its favor as to whether it met its duty to provide Teal's employees with a safe place to work was contrary to Maryland law and unreasonable in light of the evidence. Telephone Co. argues that by giving Teal notice of the location of the nearby gas main *and* by contractually requiring Teal to observe certain manhole safety practices, Telephone Co. met, as a matter of law, its safe workplace duty owed Teal's employees, including plaintiffs. We disagree.

■ Under Maryland law, an employer of an independent contractor generally owes the latter's employees "the same duty [it] would owe the employees of [its] own to furnish them with a safe place to work." *LeVonas v. Acme Paper Board Co.*, Md.Ct. App., 184 Md. 16, 40 A.2d 43, 45 (1944). And an employer's duty to provide its contractor's employees with a safe place to work includes a duty to give notice of any concealed potentially dangerous condition on the job site of which the employer was, or should have been, aware. *Id.*

However, Telephone Co. reads Maryland law, in particular *LeVonas*, as affording an employer of an independent contractor an "option" of discharging its safe workplace duty owed a contractor's employees by warning the contractor of any dangerous condition at owner's job site. Telephone Co. further interprets *LeVonas* and *Finkel-*

*stein v. Vulcan Rail & Construction Company*, Md.Ct.App., 224 Md. 439, 168 A.2d 393 (1961) as establishing Maryland law on warning of a dangerous condition, as applied to the facts of this case, to be: that assuming proper warning of a dangerous condition was once given by Telephone Co., it was not thereafter, *as a matter of law*, "obligated on a daily basis to inform Teal of every conceivable hazard which might occur from the gas or the main"; and that this is especially true of a construction project where dangers are apt to be of a more transitory nature.

In support of its contention that adequate warning was given by Telephone Co. to Teal that its employees were subject to a risk of combustible gas, Telephone Co. refers to: its notice to Teal of the nearby presence of a natural gas main (conceded to be a dangerous instrumentality); and its work safety procedures contractually required of Teal. Telephone Co. relies upon (a) its designation on the construction plans of the location of the gas main on the far side of West Isabella Street and some 25 to 30 feet from manhole H; and (b) its contractual imposition on Teal of two requirements as to work procedures: (1) before beginning work—of carefully reviewing the construction plans and examining the site; and (2) while working—of complying with specified "Safety Practices", one of which called for testing and ventilating of completed manholes for combustible gas before entry. (See page 320 above for paragraph 1, Article XVII of the Contract's "General Conditions".)

Under those undisputed facts, Telephone Co. argues that it gave Teal's management "clear warning of the gas presence and location" and, under Maryland law, thereby satisfied, as a matter of law, its optional duty of warning Teal of the existence of a dangerous instrumentality at the job site. As stated, we disagree.

Assuming *arguendo* Telephone Co.'s interpretation of Maryland law, under the facts of this case, we conclude that both the question of Telephone Co.'s compliance with its own safety requirements (as to detection of combustible gas at the work site) and the adequacy of Telephone Co.'s warning of the presence of combustible gas at the job site were issues of fact properly left by the Trial Judge for the jury to determine.

■ *First*, Telephone Co.'s argument assumes that it carried out its contractual duties under its prescribed "Safety Practices" (against the danger of combustible gas in and around completed manholes) and further assumes that Teal did not. Yet, we think that the evidence is arguably, if not demonstratively, to the contrary as to Telephone Co.'s contract compliance. It seems to us that a clear issue of both fact and law existed as to whether Telephone Co. breached its own "Safety Practices" by failing to make known to Teal that a vapor tester was "at [its] disposal" and by failing to instruct Money as to his responsibility under paragraph 1 of Article XVII. For Money claimed to have no knowledge either of the existence of the contract provision or of its incorporation of the "Bell System Practices" as to precautions to be taken at manholes for combustible gas. And, Money never informed Teal's superiors that he had a vapor tester on the job site. (See page 319 above.) Thus, we think that the jury could reasonably conclude from the evidence that without Telephone Co.'s compliance with paragraph 1 of Article XVII of the General Conditions, Teal's performance could not follow.

■ *Second*, Telephone Co. assumes that its disclosure to Teal of the existence of a gas transmission line 25 to 30 feet away from the underground conduit site constituted adequate warning—as a matter of law—to Teal that gas within the main posed an immediate threat to Teal's men engaged in underground work on the other side of the street. In our view of the evidence, Telephone Co.'s notice to Teal's management of the existence of a gas main across the street was at best nebulous, and certainly not a "clear" warning of the existence of a dangerous condition, combustible gas, at the construction site. Hence, we conclude that the Court properly denied Telephone Co.'s motion for a directed verdict based on adequacy of warning.

■ *Third*, as we read the Maryland decisional law relied upon by Telephone Co., if Telephone Co., as employer, in the exercise of reasonable care, should have sooner learned of the presence of combustible gas at its construction site, i. e., before the explosion in manhole H, then Telephone Co. had a duty to notify Teal's employees of such concealed dangerous condition. Stated another way, Telephone Co. did not have an "option" of giving notice (assuming its adequacy) to Teal of the possibility of a dangerous condition at the job site if Telephone Co. should have: (a) discovered the condition—that combustible gas was collecting in completed manhole H at the job site; and (b) further realized that Teal's employees were not aware of the "condition" within manhole H. Restatement (Second) of Torts § 343 (1965). The following statements in *LeVonas* appear to support this.

"It is only when there is some concealed peril, known to the owner but not known to the person injured, which he has failed to warn against, that he will be held responsible. *Pinehurst Co. v. Phelps*, 163 Md. 68, 160 A. 736; *Gordon v. Maryland State Fair*, 174 Md. 466, 199 A. 519.

\* \* \* \* \* \*

When the risk to which an employee is exposed arises from causes which are *concealed*, the employer is bound to notify him of them, provided that he himself knows them, or by the exercise of ordinary care ought to have known of them."
40 A.2d at 45.

*Fourth*, we find Telephone Co.'s reliance on *LeVonas*—as supporting its argument that Telephone Co. was, as a matter of law, "not obligated to inform Teal of every conceivable hazard which might occur from the gas or the main"—to be misplaced. In *LeVonas*, a directed verdict for employer was affirmed on a finding that contractor's employees' own negligence was the cause of their injuries. Their negligence lay in "recklessly" moving a steel cable hoist almost directly under exposed high tension wires. In that factual context, the Maryland Court stated that the employer was not required to "anticipate at his peril every

possible fortuitous circumstance under which some person "might come in contact with the wire...." 40 A.2d at 45. Here there is no issue of contributory negligence and the hazard of combustible gas was not exposed so as to be self-evident to plaintiffs.

Finally, Telephone Co. concedes that the question of whether an employer's warning of a dangerous condition transmitted to management of an independent contractor is warning to each of the contractor's employees is undecided under Maryland law. However, Telephone Co. finds the majority rule elsewhere to support such proposition. *Levesque v. Fraser Paper Limited*, Me.S.J. Ct., 159 Me. 131, 189 A.2d 375 (1963); *Schwarz v. General Electric Realty Corp.*, Ohio Supr., 126 N.E.2d 906 (1955); *Pruett v. Precision Plumbing, Inc.*, Ariz.Ct.App., 27 Ariz.App. 288, 554 P.2d 655 (1976). Therefore, Telephone Co. urges application of the majority rule to the facts of this case as being appropriate under Maryland law. Gas Co. takes the opposite view on notice as to Maryland law. Gas Co. states that whether notice to the contractor is notice to all of its employees depends on various factors: degree of control retained by employer; size of the contractor's work force; and whether notice was effectively given.

Here, Telephone Co's inspector, Money, was assigned to the job on a daily basis and equipped with a gas vapor tester. One could reasonably assume that the vapor tester was furnished in compliance with Telephone Co.'s contract obligations and so that Teal could then comply with the contract's provisions as to safety practices to be followed by its workmen when working in or around completed manholes. However, Money understood that the tester was provided by Telephone Co. primarily for his personal use and only for Teal's use if Teal requested it. On these conflicting facts, we think that neither the question of Telephone Co.'s retained control over safety procedures necessary for detection of the presence of combustible gas nor the adequacy of Telephone Co.'s notice of a dangerous condition at the construction site were prop-

er issues for the Trial Court to resolve as a matter of law.

In summary, under the facts and the law, we find that the Trial Court probably ruled that it was for the jury to determine the safe workplace issue (averment A above), including: (1) whether Telephone Co., as well as Teal, carried out their respective contractual obligations to protect plaintiffs from injury from combustible gas; (2) whether Telephone Co. should have known before the explosion of the actual presence of combustible gas at the work site; and (3) if not, whether Telephone Co. discharged its duty of giving adequate warning to plaintiffs, directly or through Teal, of the possible danger of combustible gas at the job site.

## B

We next take up key averment B (pages 317, 318) and the applicability to this case of certain Restatement of Torts exceptions to the independent contractor rule. Telephone Co. contends that, assuming Teal to be an independent contractor (as the jury later found), Telephone Co. was wrongfully denied a directed verdict as to Gas Co.'s averments: (1) that the work contracted to Teal was inherently dangerous or dangerous in the absence of special precautions [averment B–1, page 317]; and (2) that Telephone Co. owed Teal's employees, including plaintiffs, three specified duties that it could not delegate to Teal and each of which it breached [averments B–2 through B–4, pp. 317, 318].

■ At common law, the general rule was that an employer of an independent contractor was not liable for physical injury to another caused by the contractor's negligence. The employer's freedom from liability was premised on his lack of control over the manner in which the contractor per-

formed his work. However, so many exceptions were later made to the rule that the rule, in the words of the Restatement of Torts, "can now be said to be 'general' only in the sense that it is applied where no good reason is found for departing from it." Restatement (Second) of Torts § 409 [9] (1965), Comment, page 370. The Restatement refers to the exceptions as falling into three broad categories:

"1. Negligence of the employer in selecting, instructing, or supervising the contractor.

2. Non-delegable duties of the employer, arising out of some relation toward the public or the particular plaintiff.

3. Work which is specially, peculiarly or 'inherently' dangerous."

Restatement (Second) of Torts, § 409, Comment, page 371.

The three specified non-delegable duties which Gas Co. attributes to Telephone Co. are: (1) a duty to exercise control as to certain matters (testing and ventilating manholes for gas) over which Telephone Co. retained some control; (2) a duty to recognize a commonly known danger at the construction site and to act accordingly; and (3) a duty to halt Teal's operations, or to remove danger, after becoming aware that Teal's workmen were, by their action or inaction, creating a dangerous situation. In addition, Gas Co. asserts that the work contracted to Teal was dangerous in the absence of special precautions or was inherently dangerous.[10]

Relating Gas Co.'s averments to the Restatement's categorization of exceptions to the general rule (exonerating an employer from liability for the negligence of his contractor), it appears that Gas Co. is relying on all three of the Restatement's categories

---

**9.** Restatement (Second) of Torts § 409 provides:

"§ 409. General Principle.
Except as stated in §§ 410–429, the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants."

**10.** The Court is obliged to adopt Telephone Co.'s summarizations of Gas Co.'s allegations as to non-delegable duties and danger inherent in the work or in the absence of special precautions—due to Gas Co.'s failure to state on appeal its trial allegations as to such matters.

of exceptions to Rule 409 referred to above.[11]

Telephone Co.'s directed verdict argument based on Teal's independent contractor status is premised on Maryland's recognition of Restatement § 409 and its enumerated exceptions which are found in §§ 410 through 429 of the Restatement. From that premise—with which Gas Co. agrees[12]—Telephone Co. asserts various reasons why, as a matter of law, none of Gas Co.'s non-delegable duty averments are recognized under the Restatement and Maryland decisional law. Alternatively, Telephone

Co. contends that there was no evidence of its breach of such duties to permit a jury charge thereon.

### B–1

We first take up Gas Co.'s related § 409 category 3 exception argument (key averment B–1, page ———), namely that the work contracted out by Telephone Co. to Teal was inherently dangerous, within the meaning of Restatement exception § 427[13] or dangerous in the absence of special precautions, under related Restatement exception § 416.[14] Telephone Co.'s response is

---

**11.** The Restatement explains that while category 1 exceptions (which include §§ 410 through 415 of the Restatement) have in common a finding attributing employer's liability to his personal fault, category 2 and 3 exceptions (which include §§ 416 through 429 of the Restatement) are rules of "vicarious liability, making the employer liable for the negligence of the independent contractor, irrespective of whether the employer has himself been at fault." The Restatement continues, "[The latter rules] arise in situations in which, for reasons of policy, the employer is not permitted to shift the responsibilities of the proper conduct of the work to the contractor... The statement commonly made in such cases is that the employer is under a duty which he is not free to delegate to the contractor. Such a 'non-delegable duty' requires the person upon whom it is imposed to answer for it that care is exercised by anyone, even though he be an independent contractor, to whom the performance of the duty is entrusted....

These exceptions have tended to develop in particular types of fact situations which have tended to be repeated, particularly where the duty of the employer relates to the putting or maintaining of land, structures and chattels in such a condition as not to be unreasonably dangerous to others. Few courts have made any attempt to state any general principles as to when the employer's duty cannot be delegated, and it may as yet be impossible to reduce these exceptions to such principles. The various rules stated tend, to a remarkable extent, to overlap... Frequently, where the Court is unwilling to find the application of a particular exception in the particular case, another is relied on instead. This has made for a great deal of confusion, and some uncertainty as to the law in many jurisdictions." Restatement (Second) of Torts, pages 394, 395.

**12.** The parties agree that *Cutlip v. Lucky Stores, Inc.*, Md.Ct.Spec.App., 22 Md.App. 673, 325 A.2d 432 (1974) is authority for Maryland having adopted Rule 409 and its exceptions found in §§ 410 through 429.

**13.** Restatement § 427 provides:

"*Negligence as to a Danger Inherent in the Work.*
One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger."

The Reporter's Notes to § 427 state that while the first Restatement, "... stated the rule in terms of 'work which is inherently dangerous to others', [t]he new Section substitutes danger which the employer knows to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract." Restatement (Second) of Torts, Appendix § 427, page 77. As will be seen, this shift in emphasis becomes significant. (See pp. 329–330 below.)

Comment (b) to § 427 explains that for work to be "inherently" dangerous, the work need not "... be of a kind which involves a high degree of risk of such harm, or that the risk be one of very serious harm, such as death or serious bodily injury. It is not necessary that the work call for any special skill or care in doing it. It is sufficient that work of any kind involves a risk, recognizable in advance, of physical harm to others which is inherent in the work itself, or normally to be expected in the ordinary course of the usual or prescribed way of doing it, or that the employer has special reason to contemplate such a risk under the particular circumstances under which the work is to be done." Restatement (Second) of Torts, Comment b, page 416. (Underlining added for emphasis.)

**14.** Restatement § 416 provides:

"*Work Dangerous in Absence of Special Precautions.*
One who employs an independent contractor to do work which the employer should recognize

twofold: (1) assuming the facts to state a § 427 claim, or a related § 416 claim, an employer's liability under those § 409 exceptions is limited under Maryland law, and the great weight of authority, to resultant injury to third parties or the public at large and not to injury to its contractor's employees; and (2) assuming the contrary (that an employer's liability under a § 427 or § 416 scenario extends to its contractor's employees harmed thereby), the facts of the instant case do not support either a § 427 or a § 416 claim against Telephone Co.

The root cause of the controversy over the scope of an employer's liability under § 427 and § 416 for an independent contractor's negligence is the use of the undefined term "others" within each of the sections of the Restatement. Thus, § 427 states, in part:

"One who employs an independent contractor to do work involving a special danger to *others* which the employer knows or has reason to know to be inherent in or normal to the work, ... is subject to liability for physical harm caused *to such others* by the contractor's failure to take reasonable precautions against such danger." (emphasis added).

And § 416 similarly states, in part:

"One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm *to others* unless special precautions are taken, is subject to liability for physical harm caused *to them* by the failure of the contractor to exercise reasonable care to take such precautions...." (emphasis added).

as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."

The Comments to § 416 and § 427 refer to the "close relation" between the two rule exceptions. The Commentary to § 416 states, in part, "The two rules represent different forms of statement of the same general rule, that the employer remains liable for injuries resulting

Nor do the Comments to Restatement § 416 and § 427 define or give explicit meaning to the term "others". However, we note (1) that all of the hypothetical fact illustrations of both § 416 and § 427 refer to harm incurred by third persons or the public at large and none refer to harm or injury to employees of the independent contractor; yet (2) the Restatement's descriptions of category 2 exceptions (controlling § 416 through § 429) is based on "non-delegable duties of the employer, arising out of some relation toward the public *or* the particular plaintiff." (emphasis added). (See page 324 above.)

The parties disagree as to Maryland decisional law on the question presented. Telephone Co. relies upon *State v. City of Baltimore*, Md.Ct.App., 86 A.2d 618 (1952) as clear authority that an independent contractor's employees are not within the ambit of an employer's liability for physical harm resulting from a contractor's negligence while engaged in inherently dangerous work. Gas Co. discounts the significance of the *City of Baltimore* decision and in turn relies upon *Cutlip v. Lucky Stores, Inc., supra*, as demonstrating Maryland's recognition of the right of employees of an independent contractor to seek damages from an employer for harm resulting from inherently dangerous work.

■ As will be seen, we find Maryland law to be less than clear by reason of the holdings in the two cited decisions; but we conclude that Maryland recognizes a contractor's employees as being within the scope of an employer's liability for harm resulting from the contractor's negligence

from the dangers which he should contemplate at the time he enters into the contract, and cannot shift to the contractor the responsibility for such dangers, or for taking precautions against them .... The Rule stated in [§ 416] is more commonly stated and applied where the employer should anticipate the need for some specific precaution ... [while] ... § 427 is more commonly applied where the danger involved in the work calls for a number of possible hazards, as in the case of blasting, or repainting carried on upon a scaffold above the highway." Restatement (Second) of Torts, § 416, page 395.

in work which is inherently dangerous within the meaning of § 427 or dangerous in the absence of special precautions under § 416 of the Restatement.

In *City of Baltimore,* claim was made against the City as the employer of an independent contractor for the death of a subcontractor's employee. Employee had fallen from a steel beam which he was riding as the beam was being lowered by a crane, the operator of which allowed the cable to slip. The City's liability was premised on three grounds: (a) alleged breach of its duty as owner to an invitee to use ordinary care for his safety; (b) negligence by the City in its exercise of retained control over the work to be done on its premises; and (c) allowing unsafe methods to be used in work that was inherently dangerous. Each of the three grounds was found insufficient as a matter of law. As to the first ground, the Court related it to an owner's common law duty to invitees to protect them from injury from an abnormally dangerous condition of the premises; but the Court found that employee's injury had resulted not from any condition of the premises but solely from the negligence of a fellow employee. The remaining grounds for liability related to exceptions to Rule 409 of the Restatement of Torts, including Restatement § 414, as to retained control. As to the § 414 claim for employer liability, the Court stated that an owner-employer was "answerable only for personal fault...."[15] 86 A.2d at 621. And the Court affirmed dismissal of the retained control claim for failure of the complaint to allege any neglect of duty by the City. As to the contention that the City was engaged in "inherently dangerous work", the Court noted that the crane had been equipped with a safety pawl which, if used, would have prevented the accident. Therefore, the Court concluded that the accident was due solely to the neglect of the crane operator. The Court then stated:

> "We do not suggest, however, that the City in any event owed a non-delegable duty to employees of the subcontractor, as distinguished from members of the general public, to protect them against injuries in the course of work that is inherently dangerous." 86 A.2d at 622.

Telephone Co. relies on this language as clearly demonstrating Maryland's adoption of the view that as to an inherently dangerous *work* claim, an employer's liability does not extend to the employees of an independent contractor but only to the public at large.

Gas Co. disagrees with this reading of *City of Baltimore.* Because the Court also recognized an owner's liability to employees of an independent contractor "for injuries arising out of the abnormally dangerous condition of the premises", 86 A.2d at 621, Gas Co. argues that Maryland *thereby* recognizes and applies the inherently dangerous work exception to the employees of an independent contractor. Alternatively, Gas Co. reads *City of Baltimore* as not reaching the inherently dangerous work exception of § 427 of the Restatement because of the Court's finding that the injury in question was not caused by the premises' condition.

▌ We think Gas Co. thereby confuses a § 427 claim against an employer based on a non-delegable duty arising from inherently dangerous work with an owner's independent common law duty to protect invitees from dangerous land conditions, which is recognized in Restatement § 343.[16] It is this common law duty of an owner as to

---

**15.** Since § 414 falls within category 1 exceptions of the Restatement commentary, the Court's ruling was consistent with the Restatement. See footnote 11.

**16.** Section 343 of Restatement (Second) of Torts states:

"*§ 343. Dangerous Conditions Known to or Discoverable by Possessor*

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

dangerous land conditions that gives rise to an owner-employer's safe workplace duty—to warn any invitee, including a contractor's employees, of any dangerous condition of which the employees are not, or should not be expected to be, aware.[17, 18] Thus, in our view, the Court's above-quoted statement (see page 327) in *City of Baltimore* cannot be passed off as dicta related to a § 343 claim, because the statement addressed a non-delegable duty exception based on an implicit § 427 claim.[19]

However, whatever precedential weight *City of Baltimore* was entitled to appears to us to have been lost by the decision of the Maryland Court of Special Appeals in *Cutlip* over 20 years later. There, a wrongful death suit was brought on behalf of a deceased employee of an independent contractor against the owner and its architect following collapse of a nearly completed building. The suit followed decedent's survivors' recovery of full workmen's compensation benefits from decedent's employer, a subcontractor; and the Court's further determination that compensation was plaintiffs' exclusive remedy against the project's general contractor. Plaintiffs sought recovery from owner for breach of its common law duty to protect decedent from dangerous conditions—thereby asserting a § 343 claim. But plaintiffs also claimed that owner created a peculiar risk or special hazard by authorizing the construction of a building using untested construction techniques—thereby invoking a § 416 claim.[20] Disposing of both claims on their merits, the Court affirmed on appeal a directed verdict for owner. The Court found that the proven facts neither stated a § 343 claim as to an abnormally dangerous condition on premises as to which owner retained a measure of control nor a § 416 claim that the work involved a peculiar risk.

The common law basis for imposing owner liability was rejected in *Cutlip* because

---

**17.** This confusion of these two related but different principles of tort law is apparent in Gas Co.'s statement that the Court in *City of Baltimore* looked to § 414 of the Restatement "after it had decided that § 427 was not applicable because there was not an inherently dangerous condition." In similar vein, Gas Co. states that the Court's above-quoted statement in *City of Baltimore* relied upon by Telephone Co. is to be disregarded because the Court had already decided "as a matter of fact that an inherently dangerous condition did not exist." Similarly, here Gas Co. argues that the jury decided that there was an inherently dangerous condition—when what the jury, by special interrogatory, found was "that Teal was engaged in inherently dangerous work."

**18.** *See LeVonas v. Acme Paper Board Co.,* Md. Ct.App., 184 Md. 16, 40 A.2d 43 (1944) for Maryland's recognition of this duty of an owner to employees of an independent contractor to furnish them a safe place to work and to warn of any concealed or dangerous conditions known to the owner and not known to the person injured or likely to be otherwise discoverable. However, Maryland appears to condition an owner's liability for injuries to an employee of an independent contractor occurring on owner's premises upon the premises remaining under owner's control:

"In other words, liability for injuries to a servant of an independent contractor rests upon the owner when the premises on which the stipulated work is done remain under his control and the injuries arise out of the ab-

normally dangerous condition of the premises, the owner being chargeable with knowledge of the danger." 40 A.2d at 45.
*See also Cutlip v. Lucky Stores, Inc., supra,* stating:
"*LeVonas* espouses no profound doctrine of unique origin. It simply states that an owner may be liable for injuries to an employee of an independent contractor when the premises on which the contracted work is done remain under the owner's control and the injury arises out of an abnormally dangerous condition of the premises, of which condition the owner is chargeable with knowledge. The ground of liability is the owner's superior knowledge of the danger to persons going upon the property. *Bohlen v. Glenn L. Martin Co.,* 193 Md. 454, 460–461, 67 A.2d 251." 325 A.2d at 438.

**19.** Indeed, *Cutlip*, next discussed, recognizes the distinction between a claim based on a dangerous condition of the premises and a § 416 claim based on work likely to create a peculiar risk of harm.

**20.** A third contention was also made (and rejected) that owner retained such control over its architect as to be liable under agency law for architect's negligence. The contention was rejected because of the lack of evidence that owner, either by its contract with architect or by its later conduct, controlled the manner in which architect performed his duties.

the Court found "no evidence of a pre-existing dangerous condition, either concealed or apparent." In the Court's view, the conditions which led to the collapse of the building were not attributable to the acts or omissions of the owner but solely to the general contractor. As to owner's liability based on § 416 of the Restatement, the *Cutlip* Court found no evidence to support the claim because, " 'the [contractor's] negligence, if any, was in the mere detail of the work.' " (citations omitted). 325 A.2d at 440.

Given the close relationship that § 416 bears to § 427 (see footnote 14 above), we conclude that Maryland, through *Cutlip*, fairly clearly recognizes that a contractor's employees are within the scope of an employer's liability for harm resulting from the contractor's negligence in work either inherently dangerous under § 427 or dangerous in the absence of special precautions within the meaning of § 416 of the Restatement. The failure of the Maryland Court of Special Appeals to even cite *City of Baltimore* suggests to us its lack of precedential value.

■ Thus, we conclude that under Maryland law, plaintiffs had standing to assert a § 416 or § 427 claim against Telephone Co. based on its vicarious liability for injuries as to work which was either dangerous in the absence of special precautions within the meaning of § 416 or inherently dangerous under § 427 of the Restatement.

In view of our conclusion as to Maryland law, we need not consider the law in other jurisdictions on the question presented. However, we note that there is a clear split of authority, with the apparent weight of authority against including employees of an independent contractor within the scope of an employer's liability under the exceptions to categories 2 and 3 of the Restatement. (For further discussion of such authority, see pp. 331–332.)

\* \* \*

■ We next take up Telephone Co.'s alternative contention as to key averment B–1—based on the assumption that plaintiffs are within the scope of Telephone Co.'s liability under the inherently dangerous work exception to the independent contractor rule. Telephone Co. argues that the underground conduit and manhole construction work was not work that was either inherently dangerous under § 427 or dangerous in the absence of special precautions within the meaning of § 416 of the Restatement. The issue being a factual one, and the Trial Court having denied Telephone Co.'s directed verdict motion after the evidence, the question presented is whether, under any reasonable view of the evidence, the jury could justifiably find in favor of plaintiffs and against defendant. Again, we view the evidence in a light most favorable to plaintiffs, the non-moving party. *Ebersole v. Lowengrub*, Del.Supr., 208 A.2d 495 (1965); and *Parks v. Ziegler*, Del.Supr., 221 A.2d 510 (1966).

Telephone Co.'s position is: that underground conduit and manhole construction work is not work that is either inherently dangerous under § 427 or work that is dangerous in the absence of special precautions within the meaning of § 416 of the Restatement; and that plaintiffs' injury resulted from Teal's negligence in carrying out the "operative details" of work which Telephone Co. could reasonably assume would have been carried out with proper care. Telephone Co. argues that if Teal had complied with the appropriate manhole safety procedures as stipulated in the contract between the parties, the manholes would have been tested for gas before entry; the gas in manhole H would have been detected; and proper precautions then taken to ventilate the manhole before plaintiffs entered it.

We cannot agree with Telephone Co.'s construction of § 416 and § 427 of the Restatement. Further, viewing the facts in a light most favorable to plaintiffs, we think they were sufficient to support a finding that the underground work came within each of the Restatement exceptions.

*First,* we note that the jury found Teal was engaged in inherently dangerous work, a finding which Telephone Co. does not

contest on appeal. Further, the Trial Court did not rule that underground conduit and manhole construction work was per se inherently dangerous. The Court only found it to be so under the operative facts of this case where the work was required to be undertaken in the bed of a street in which there also lay a gas transmission main. Thus, the Trial Court's ruling was not contrary to current decisional law in other jurisdictions. *Persichilli v. Triborough Bridge & Tunnel Authority*, N.Y.Ct.App., 262 N.Y. S.2d 476, 16 N.Y.2d 136, 209 N.E.2d 802 (1965); *Schaum v. Southwestern Bell Telephone Co.*, Mo.Supr., 336 Mo. 228, 78 S.W.2d 439 (1934).

*Second*, the Reporter's Notes to § 427 indicate that while the first Restatement "stated the rule in terms of 'work which is inherently dangerous to others', [new § 427] substitutes danger which the employer knows to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract." (See footnote 13 above.) We think this to be a significant shift in emphasis which the Trial Court implicitly recognized in denying the directed verdict motion. Further, as Comment b to § 427 states, it is not that the work need involve a high degree of risk but only that it involve a risk "recognizable in advance ... or that the employer has special reason to contemplate ... under the particular circumstances under which the work is to be done." (See footnote 16 above.)

Here we think the jury could reasonably conclude that Telephone Co. was aware of the risk of combustible gas collecting in the manholes to be constructed by reason of the close proximity of the gas transmission main on the other side of the street. And for that reason, Telephone Co. included in its contract with Teal the provisions as to manhole safety practices and incorporated the Bell System Practices for testing and ventilating manholes for the presence of combustible gas. Also arguably in recognition of the work itself [gas] which [Telephone Co.] ... contemplate[d] at the time of [its] contract."[21] (emphasis added).

*Third*, we cannot agree that Teal's negligence in failing to protect plaintiffs from injury due to the presence of combustible gas in manhole H was "collateral" in the sense that it arose out of "operative details" of Teal's work involving no peculiar risk, thus allowing Telephone Co. to "reasonably assume [that the work would] be carried out with proper care." Comment d to § 427. A risk of gas in Teal's work and the need to follow the safety practices of the contract between the parties were not only anticipated by Telephone Co. but arguably required its cooperation in providing the necessary equipment. Thus, the "collateral negligence" rule is not, in our view, appropriate for application to the facts of this case. The danger of gas in manholes was either inherent in the work or a special risk which Telephone Co. recognized in advance as requiring special precautions. Since the danger of gas in manholes was a risk "recognizable in advance" by Telephone Co., the danger thereby clearly fell within § 427, Comment b of the Restatement. *See Wash. Sub. San. Com'n v. Grady Develop. Corp.*, Md.Ct.App., 37 Md.App. 303, 377 A.2d 557 (1977).[22]

**21.** We thereby paraphrase a portion of Comment d to § 427, stating:

"As in the case of the rule stated in § 416, the rule here stated applies only where the harm results from the negligence of the contractor in failing to take precautions against the danger involved in the work itself, which the employer should contemplate at the time of his contract. It has no application where the negligence of the contractor creates a new risk, not inherent in the work itself or in the ordinary or prescribed way of doing it, and not reasonably to be contemplated by the employer. Likewise, the rule stated here has no application to the 'collateral negligence' of the contractor covered in § 426, particularly as to negligence in the operative details of the work which involve no peculiar risk, which the employer may reasonably assume will be carried out with proper care."

**22.** In *Washington Suburban*, the Court similarly stated:

"Where, as here, the risk of such harm is involved in carrying out the work to be done under the contract, ensuing negligence cannot be deemed collateral to its performance. *Prosser, supra*, at 475. The employer 'is bound to

We conclude that the Trial Judge properly denied Telephone Co.'s motion for a directed verdict based on the contention that the facts were insufficient to support a claim that the work was dangerous in the absence of special precaution under § 416 or inherently dangerous under § 427 of the Restatement (Second) of Torts.

### B–2

We next take up Telephone Co.'s contentions that the Trial Court erred in failing to enter a directed verdict, after the evidence, as to each of Gas Co.'s three specified "nondelegable" duties attributed to Telephone Co. We refer to key averments B–2, B–3 and B–4 (see pp. 317, 318), that is, Gas Co.'s averments: B–2, that Telephone Co. failed to exercise control over matters as to which it retained some control, namely, testing and ventilating the completed manholes for gas, in breach of § 414 of the Restatement; B–3, that Telephone Co. failed "to recognize a commonly-known danger, to wit., gas, and failed to act accordingly"; and B–4, that Telephone Co. failed "to halt the operation or otherwise put a stop in the dangerous situation created by [Teal's] workmen" after becoming aware that they were not following prescribed safety practices for working in and around completed manholes.[23] Basically Telephone Co.'s position is: that plaintiffs lack standing to recover under Restatement § 414; and that neither of Gas Co.'s remaining averments B–3 and B–4 state recognizable nondelegable duty exceptions to Restatement § 409. We agree with Telephone Co. as to B–3 and B–4 but not as to B–2.

As to B–2, Telephone Co.'s liability based on retained control in alleged breach of § 414, its argument as to § 414 is essentially the same as was made, and rejected, as to §§ 416 and 427 of the Restatement. That argument is that an independent contractor's employees are not within the intended scope of an employer's liability under the Restatement exception to § 409. We again reject Telephone Co.'s argument that its liability "to others" under § 414 [24] refers only to the public at large and not to Teal's employees, including plaintiffs. The argument fails for the reasons stated under B–1 above. It also fails because we think the question is foreclosed by the Court's ruling in *State v. City of Baltimore, supra,* on a similar § 414 claim by a contractor's injured employee. There, the Court did not dismiss the claim for lack of standing but for failure of the complaint to allege any neglect of duty by the City. (See pages 326, 327 above.)

A further argument for excluding a contractor's employees from the scope of an employer's liability for breach of a non-delegable duty is based on consideration of workmen's compensation principles and benefits. Reference is made to Tentative Draft No. 7 of the American Law Institute for the Restatement (Second) of Torts as reflecting intent of the draftsmen to exclude independent contractors' employees from an employer's liability.[25] The reasoning for excluding contractor's employees is based on the presumption that the contractor passed on to employer his cost of doing business, including the cost of providing workmen's compensation benefits for his employees. Therefore it is argued that the injured employee should be limited to his workmen's compensation remedy against his employer. Further, to subject the contractor's employer to civil liability to an injured employee yet limit the employee's

---

anticipate that such injuries may naturally result' ...." (citations omitted).

**23.** We quote from the Trial Court's jury charge as to averments B–3 and B–4.

**24.** Section 414 of the Restatement provides: "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm caused to others for whose safety the employer owes a duty to exercise reason-

able care, which is caused by his failure to exercise his control with reasonable care."

**25.** Tentative Draft No. 7 of Restatement (Second) of Torts, 17–18 (1962) stated: "It is to be expected that the cost of the workmen's compensation insurance will be included by the contractor in his contract price for the work, and so will in any case ultimately be borne by the defendant who hires him."

remedy to compensation benefits against his employer is said to create an anomaly. It is also argued that the anomaly is compounded by the fact that the injured employee would have been limited to compensation had he been hired directly by an employer eschewing the assumed protective benefits of employing an independent contractor.

A number of jurisdictions have adopted this reasoning for excluding an independent contractor's employees from the scope of an employer's vicarious liability for breach of non-delegable duties.[26] But other courts have rejected this exclusion based on consideration of workmen's compensation benefits and principles.[27] Reliance on the 1962 Tentative Draft is said to be misplaced because the final adopted version of Restatement (Second) of Torts did not include the Tentative Draft language.

From our reading of reported Maryland decisions, particularly *Cutlip v. Lucky Stores, Inc., supra,* we conclude that Maryland implicitly adopts the view that workmen's compensation is irrelevant to whether a contractor's employees are excluded from the scope of an employer's liability for vicarious breach of a non-delegable duty. In *Cutlip* the Court expressly noted that plaintiffs had already recovered workmen's compensation benefits from decedent's employer, a subcontractor; and yet the Court gave no weight to the fact in determining plaintiff's right to recover from the owner of the premises. *See also Kreiger v. J. E. Greiner Co., Inc.,* Md.Ct. App., 282 Md. 50, 382 A.2d 1069 (1978). There, an injured subcontractor's employee who had collected workmen's compensation

benefits from his subcontractor's carrier brought suit for his own use *and* for the use of his employer's compensation carrier against engineering firms responsible for design and supervision of construction of a bridge. Again, the Court gave no consideration to plaintiffs' lack of standing to sue based on their recovery of workmen's compensation benefits.

Applying what we take to be Maryland law, we reject Telephone Co.'s lack of standing argument for dismissal of Gas Co.'s § 414 claim.

\* \* \*

We turn to Telephone Co.'s alternative contention that the facts were insufficient to state a § 414 claim against Telephone Co. based on its retention of any control over Teal's work. Telephone Co. argues that because it retained no control over the manner in which Teal should perform its work, the facts do not sustain a § 414 claim. Telephone Co. relies upon Comment c to § 414, which states in part:

"In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work was done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports.... There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way."

However, Comment a to § 414 also states:

"If the employer of an independent contractor retains control over the operative

**26.** *State v. Morris,* Alaska Supr., 555 P.2d 1216 (1976); *Welker v. Kennecott Copper Company,* Ariz.Ct.App., 1 Ariz.App. 395, 403 P.2d 330 (1965); *Hale v. Peabody Coal Company,* Ind.Ct. App., 168 Ind.App. 336, 343 N.E.2d 316 (1976); *King v. Shelby Rural Electric Cooperative Corp.,* Ky.Ct.App., 502 S.W.2d 659 (1973); *Donch v. Delta Inspection Services, Inc.,* N.J. Super., 165 N.J.Super. 567, 398 A.2d 925 (1979); *Evans v. Whirlpool Corp.,* Ohio Supr., 10 Ohio 2d 240, 227 N.E.2d 208 (1967); *B. L. Humphreys v. Texas Power & Light Company,* Tex.Ct.App., 427 S.W.2d 324 (1968); *Eutsler v. United States,* 376 F.2d 634 (10th Cir. 1967);

*Hess v. Upper Mississippi Towing Corp.,* 559 F.2d 1030 (5th Cir. 1977).

**27.** *Smith v. Inter-Cty. Telephone Co.,* Mo.Supr., 559 S.W.2d 518 (1977); *Snider v. Northern States Power Co.,* Wisc.Supr., 81 Wis.2d 224, 260 N.W.2d 260 (1977); *Gonzalez v. United States Steel Corp.,* Pa.Super., 248 Pa.Super. 95, 374 A.2d 1334 (1977); *International Harvester v. Sartain,* Tenn.Ct.App., 32 Tenn.App. 425, 222 S.W. 854 (1965); *Schultz and Lindsay Construction Company v. Erickson,* 352 F.2d 425 (8th Cir. 1965); *Woolen v. Aerojet General Corporation,* Cal.Supr., 57 Cal.2d 407, 20 Cal. Rptr. 12, 369 P.2d 708 (1962).

detail of doing any part of the work, he is subject to liability for the negligence of the employees of the contractor engaged therein. . . . "

 Relating this comment to the facts, the contract between Telephone Co. and Teal mandated certain safety practices by Teal when working in or around completed manholes and forbade Teal's workmen from entering any manhole "without first testing for the presence of combustible gas using an approved Vapor tester *to be furnished by Telephone Company.* . . ." (emphasis added). (See page 320 above.) Telephone Co. then assigned its employee, Money, to the job on a full-time basis and provided him with a vapor tester. A clear inference from the contract and Telephone Co's conduct was that Money was to make the vapor tester available to Teal to permit it to comply with the stipulated safety practices. And Horsman, Money's immediate superior, confirmed that the vapor tester furnished Money was to be made available for Teal's use so as to be "at their disposal." But Money did not have the same understanding. He was of the belief that the vapor tester was for his personal use and only for Teal's use "if [Teal] requested it." Money's further understanding was that he was to keep the vapor tester in his possession at all times. Indeed, even after the explosion, Money would still not let Teal's men borrow the equipment to use themselves and he performed all testing and ventilating of manholes. Horsman's superior, Grubb, also testified that Telephone Co.'s gas detection equipment was only to be used by Telephone Co. personnel. Finally, while Money's primary responsibility was to inspect Teal's work for contract compliance, the jury could infer that Money's subordinate responsibility, whether he realized it or not, was to see that Teal's men complied with Telephone Co.'s safety practices and to report any violation to his superiors.

In our view, the above evidence was clearly sufficient to support a charge against Telephone Co. under § 414 of the Restatement.

## B–3

We turn to Gas Co.'s remaining "non-delegable duty" averments allegedly owed by Telephone Co. to Teal's employees—assuming Teal to be an independent contractor. Gas Co. asserts that Telephone Co. had a non-delegable duty: to "recognize a commonly known danger"—gas at its construction site—and "to act accordingly" [key averment B–3, page 317]; and to halt Teal's operation, or remove danger, after becoming aware that Teal's workmen were creating a dangerous situation [key averment B–4, page 317].

Telephone Co. argues that it was entitled to a directed verdict as to both averments on the ground that neither comes within any of the recognized exceptions to § 409 of the Restatement (Second) of Torts. (See footnote 9 above.) Telephone Co.'s position is well taken.

 A review of the Restatement exceptions to the general principle stated in § 409 (that "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants") demonstrates that neither of the above averments falls within any of the exceptions stated in §§ 410 through 429 of the Restatement. And the Maryland courts appear to recognize the Restatement exceptions to § 409 as defining the limits of the exceptions to the independent contractor rule. *See Cutlip v. Lucky Stores, Inc., supra,* and *Gardenvillage Realty Corporation v. Russo,* Md.Ct.Spec.App., 34 Md.App. 25, 366 A.2d 101 (1976).

Gas Co. makes an oblique response as to the law by arguing that the facts sustain the existence of such alleged non-delegable duties. Gas Co. refers to the testimony of Horsman "and others" (unidentified) as evidencing Telephone Co.'s retention of control over safety practices at the job site. Through this retention of control, Gas Co.

argues that Telephone Co. breached a § 414 non-delegable duty exception to § 409.[28]

In our view, reliance on § 414 is clearly inappropriate to support an alleged non-delegable duty "to recognize a commonly known danger." For § 414 concerns exclusively the retention of control by an employer over some portion of work delegated to an independent contractor followed by the employer's failure to exercise such retained control with reasonable care. Gas Co. cites no authority, Maryland or elsewhere, to support its contention that a duty to "recognize a commonly known danger" falls within any of the non-delegable duty exceptions to Restatement § 409.[29]

The purported duty of an employer-owner to employees of an independent contractor to "recognize a commonly-known danger and to act accordingly" states, in our view, nothing more than an owner's common law safe workplace duty to protect invitees from dangerous land conditions. That is a duty which is set forth in § 343 of the Restatement (Second) of Torts and does not constitute a non-delegable duty exception to Restatement § 409. (See II A, pages 327–328, 329; and B–1, pages 321–322, 323.) Further, Gas Co. sought, and was granted, a jury charge as to Telephone Co.'s safe workplace duty to protect plaintiffs from dangerous land conditions.[30]

We conclude that the Trial Court erred in granting Gas Co.'s prayer request for a charge as to "failure to recognize a commonly known danger" under the guise of its being a non-delegable duty exception to § 409. Moreover, the Court committed further error in framing the charge as follows:

"Utilities further alleges that C&P Telephone failed to recognize a commonly

known danger; to wit: Gas, and failed to act accordingly.

\* \* \* \* \* \*

If you *accept* Utilities' contentions as to C&P Telephone's *alleged* duty to recognize a commonly known danger, and find that C&P Telephone was negligent in a breach of this *alleged* duty, and that this was a proximate cause of the accident, you may find that C&P Telephone was liable for the negligence and consider this in determining a relative degree of fault by Utilities and C&P." (emphasis added)

In our view, the Court thereby not only erroneously permitted a duplicitous charge (having already given a safe workplace duty charge) but also compounded the error in permitting the jury, in effect, to determine the law as to a purported duty of Telephone Co. "to recognize a commonly known danger."

### B–4

As to Telephone Co.'s alleged duty to halt Teal's operation to protect plaintiffs from a dangerous situation, Gas Co. again contends that the facts bring this averment within exception § 414 of the Restatement so as to support a nondelegable duty jury charge. For the reasons stated above, we find § 414 inapplicable to a duty to halt operations; for § 414 concerns retained control, as to which an appropriate charge was warranted and given. (See pages 331–332, 333).

For factual support for the charge, Gas Co. relies entirely upon Horsman's testimony—that "[Teal's] operations *could* be halted" by Telephone Co. for Teal's workmen's continued violation of manhole safety practices. Gas Co. thereby argues that

28. Section 414 of the Restatement is stated at footnote 24.

29. Indeed, the record discloses that Gas Co. submitted to the Trial Court no supporting legal authority whatever for its prayer of "failure to recognize a commonly known danger"; and that Gas Co. submitted no supporting Restatement authority for its prayer as to "failure to halt a dangerous situation."

30. The Court charged the jury as follows:

"Utilities further alleges that C&P Telephone failed to provide Hopkins and Martinowski with a safe place to work. It was the duty of C&P Telephone to provide a reasonably safe place to work for those working in the manhole or to give an adequate warning of danger.

C&P Telephone owed to Teal's employees the same duty of providing a safe place to work or to give an adequate warning of danger that it owed its own employees relative to its degree of control."

even if Telephone Co. was not contractually required to halt Teal's operations for its breach of safety practices, Telephone Co., through Horsman, *assumed* the duty to halt Teal's operations upon observing such breaches. In our view, Horsman's testimony was clearly insufficient to sustain a finding that Telephone Co. assumed a duty to halt Teal's operation.[31] Horsman did not testify that he had the right to require Teal to conform to proper safety practices; nor did Horsman testify that he had the authority to stop Teal's work for breach of the safety practices. Indeed, Horsman stated that he would not "take it on my own . . . to stop the whole operation." That decision would have to have been made by Horsman's superiors; and Horsman was clearly uncertain as to what they would have done. Thus, the facts were insufficient to sustain a finding that Telephone Co., through Horsman, assumed a duty to halt Teal's work for Teal's failure to comply with proper safety practices.

Could Telephone Co. be found to be negligent based on a contractual duty to halt Teal's work for its non-compliance with proper manhole safety practices? We think not under *Krieger v. J. E. Greiner Co., Inc.*, Md.Ct.App., 282 Md. 50, 382 A.2d 1069 (1978).

*Krieger* dealt with the liability of consulting engineers, responsible for design and day-to-day supervision of a bridge's construction, to a subcontractor's employee injured as a result of unsafe work practices of his employer. By reason of the engineers' alleged knowledge of ongoing unsafe work practices of the subcontractor, the engineers were claimed to have breached a legal duty to halt the contractor's work until the unsafe conditions were corrected. Ruling that any such duty must arise by contract, by conduct or by law, the *Krieger* Court affirmed dismissal of the suit for failure to state a claim for breach of either a contractual or a legal duty. However, the Court remanded to permit plaintiff to plead a breach of duty arising by conduct or assumed responsibilities. Here, we have already determined that the evidence is insuf-

**31.** Horsman's testimony upon which Gas Co. presumably relies was as follows:

"Q. Did you have the right to make Teal conform to the proper safety practice?
A. I wouldn't say that I had the right to make them do it. I would suggest it to him, and if he was in violation of the safety practice, he should, after I called it to his attention, he should want to correct it.
Q. Any violation should have been reported to you by Mr. Money. Isn't that right?
A. Any that he observed.
Q. I mean, if he saw people—anyone from Teal going into a manhole without testing, he should report it to you, shouldn't he?
A. He would tell me that they were entering these holes before they are being tested.
Q. Now, if Teal didn't comply, couldn't the Telephone Company actually stop the work until the safety violations were ceased?
A. I never had that come up before. I am sure it could be discussed with the entire supervision. I would not take it on my own, if I saw a man go in a hole without testing, to stop the whole operation.
Q. But, if they were continually violating any safety practices, isn't it true that one of your remedies you know was to stop the work until things were straightened out?
A. I would report it to my higher supervision, and if it was our conclusion that the work should be shut down, then I am suppos-

ed to be the one that would shut it down, since I am the foreman on the job.
Q. You would shut it down if you had to?
A. I would be the one to go and tell them they would have to stop until things were corrected.
Q. And Mr. Money was there to point out safety violations, among other things, wasn't he?
A. He was there to observe the safety as they were performing the work. That was one of his responsibilities.
Q. It was your understanding the Telephone Company had the right to make Teal conform to safety standards. Isn't that right?
A. I would call it to their attention. I wouldn't say I would make them do it. If they wanted to do this on their own and all, I see no reason why I should make them do it.
Q. You just told me that if they didn't, you could stop the job.
A. I could stop it if the violations were serious enough, if it were the consensus of the higher supervision. I am not going to go out and just say 'this is in violation of a certain portion of our safety practices, you have to stop until you correct.'
Q. Don't you consider potential gas explosions of manholes a serious matter?
A. Potential explosions would be a serious matter."

ficient to support a contention that Telephone Co. assumed a duty to halt Teal's operation for non-compliance with prescribed manhole safety practices.

As to existence of a contractual duty of an employer, or his representative, to halt an independent contractor's unsafe work practices, the Court in *Krieger* noted "a decided split of authority as to whether an architect or engineer responsible for day-to-day supervision of a construction project is liable to a workman for unsafe working conditions. . . ." 382 A.2d at 1074. The *Krieger* Court then opted to follow the majority rule that a contract imposing no obligation to supervise construction methods or work for compliance with safety laws and procedures imposes no duty on an employer, or his representative, to enforce a safety code; and hence no duty to halt operations for breach of such code. *Day v. National U.S. Radiator Corporation,* La., 241 La. 288, 128 So.2d 660 (1961); *Reber v. Chandler High School District # 202,* Ariz.Ct.App., 13 Ariz.App. 133, 474 P.2d 852 (1970); *Baker v. Pidgeon Thomas Company,* 422 F.2d 744 (6th Cir. 1970).[32] In short, *Krieger* holds that a contract right of inspection or supervision reserved by an employer over an independent contractor does not impose a duty on the employer's representative to stop work for observed unsafe construction practices of the contractor. *Accord Reber v. Chandler High School District # 202, supra,* (holding that liability of an owner or employer to employees of an independent contractor for the latter's negligence would not attach without the employer's reservation of day-to-day control over the work methods of the contractor).[33]

Applying the rule in *Krieger* to this case, we conclude that Telephone Co. could not be found to be under any duty to halt Teal's operations based on Telephone Co.'s contractual undertakings as to manhole safety. We say this notwithstanding Telephone Co.'s failure to furnish a vapor tester in accord with the contract's provisions as to "Safety Practices" and their patent ambiguity. (See pp. 319, 320.) The authorities relied upon by Gas Co. on this question are clearly inapplicable in terms of the parties involved. *See* 57 *C.J.S.* "Master and Servant", § 591; *Samson Construction Company v. Brusowankin,* Md.Ct. of Apps., 218 Md. 458, 147 A.2d 430 (1958); and *Gallagher's Estate v. Battle,* Md.Ct. of Apps., 209 Md. 592, 122 A.2d 93 (1956).

■ Moreover, even if there were sufficient evidence of control over manhole safety practices undertaken or assumed by Telephone Co. to present a jury question as to its duty to halt Teal's operation, for the sake of the safety of its employees, we find that the Court erred as a matter of law in its jury charge as to Telephone Co.'s duty to halt operations. The Court charged the jury as follows:

"If a person or company that hires a contractor becomes aware that the contractor's workmen are engaged in unnecessarily dangerous practices, it is the duty of the employer of a contractor, here C & P Telephone, to halt the operation or otherwise put a stop in the dangerous situation created by the workmen.

And in addition to the general duty of an employer of a contractor, which I have just described to you, Utilities alleges that C & P Telephone was negligent with respect to safety duties which C & P Telephone undertook in its contract with Teal, or in failing to correct several dan-

---

**32.** The minority view as expressed in *Miller v. DeWitt,* Ill.Supr., 37 Ill.2d 273, 226 N.E.2d 630 (1967) holds that an architect or engineer's contractual right to supervise and inspect work implies a duty to stop unsafe work practices that are observed and are not within accepted usage or contemplation of the parties. In other words, an authority to inspect or supervise confers a right that becomes a duty to stop unsafe construction practices when they are observed.

**33.** The *Reber* Court criticized other jurisdictions that have "disregarded fundamental contractual principles in attempting to parlay general inspection or supervision clauses which give the owner or architect a right to stop observed unsafe construction processes into a duty which is neither consistent with generally accepted usage nor contemplated by the contract or the parties." 474 P.2d at 854, 855. The *Krieger* Court quotes the foregoing statement from *Reber* with implied approval. *See* 382 A.2d at 1074.

gerous conditions that it was aware that Teal's employees were creating, in violation of C & P Telephone's Bell System Practices.

\*　\*　\*　\*　\*　\*

If you accept the Utilities' contention as to C & P Telephone's *alleged* duty to halt the operation or remove a danger, and find that C & P Telephone was negligent in a breach of *this duty*, and that this was a proximate cause of the accident, you may find that C & P Telephone was liable for negligence and consider it in determining the relative degree of fault of Utilities and C & P Telephone." (emphasis added).

In our view, the Court committed legal error by oversimplifying general law and not applying Maryland law as to when an employer may be found to be under a duty to halt an independent contractor's operations for unsafe work practices. Further, the Court permitted the jury to accept Gas Co.'s contention as to Telephone Co.'s duty as being a correct statement of Maryland law, which it is not.

### C

Finally, we take up Telephone Co.'s contentions that the Court erred in permitting Telephone Co. to be charged with negligence through breach of unspecified duties, both contractual and assumed. The error is asserted to have occurred first when the Court denied Telephone Co.'s motion for a directed verdict and to have reoccurred in the Court's jury instructions. Gas Co.'s allegations of breach of duty to which Telephone Co. refers were stated as follows in Gas Co.'s request for prayers:

### "DUTIES ARISING FROM CONTRACT

The duty of care required by Telephone is not confined to the words of the contract which include the Bell System Practices. However, the contract may create a duty and if you find that Telephone has violated any duties created by the contract, you may find that Telephone contributed to the accident and consider this in its relative degree of fault. 57 Am.Jur.2d, *Negligence*, § 47."

\*　\*　\*　\*　\*　\*

### "ASSUMPTION OF ADDITIONAL DUTIES

If you find that Telephone assumed additional duties which it may not have originally been obligated to perform, then it is responsible for any assumption of these additional duties opposes a duty on it. [sic] Therefore, if you find that by its conduct, Telephone performed certain duties which were not its original duties, it is still responsible for any violation of those duties. *Cutlip v. Lucky Stores*, Md. App., 22 Md.App. 673, 325 A.2d 432 (1974)."

The Trial Court included both claims of Gas Co. as to Telephone Co.'s "duties arising from contract" and "assumption of additional duties" in its jury charge, stating:

"Utilities alleges that C & P Telephone has violated one or more of the duties of the contract. The duty of care required by C & P Telephone is not confined to the words of the contract which include the Bell System Practices. However, the contract may create a duty, and if you find that C & P Telephone has violated any of its duties created by the contract and such violation was a proximate cause of the accident, you may find that C & P Telephone contributed to the accident and consider this in its relative degree of fault."

\*　\*　\*　\*　\*　\*

"If you find that C & P Telephone assumed additional duties which it may not have originally been obligated to perform, then it is responsible for any assumption of these additional duties—it is responsible for any assumption of these additional duties which imposes a duty on it. Therefore, if you find that by its conduct, C & P Telephone performed certain duties which were not its original duties, it is responsible for any violation of these duties."

Gas Co. responds: (1) that Telephone Co. did not raise this objection either in its motion for a directed verdict or by objection to the instructions and therefore waived it; (2) that its allegations of negligence based on breach of contractual and assumed

duties were stated with particularity; and (3) that there were no jury instructions on unspecified duties. We dispose of Gas Co.'s threshold defense by concluding that the issues now raised were preserved for appeal through Telephone Co.'s objection to the jury instructions, if not by its motion for a directed verdict. That brings us to the merits of the issue.

There is no disagreement that Delaware law requires negligence to be pleaded with particularity. *See* Superior Court Civil Rule 9(b).[34] Its purpose is fairness: to enable an opponent to be informed of charges so as to be able to prepare a defense to them. *Mancino v. Webb*, Del.Super., 274 A.2d 711 (1971); *Universal Oil Products Co. v. Vickers Petroleum Co. of Delaware*, Del. Super., 16 A.2d 795 (1940). The dispute between the parties is not as to the law but its application to the facts.

■ We find the Court's charge as to Telephone Co.'s alleged negligence based on breach of contractual duties unobjectionable when viewed in the context of the Court's total charge as to breach of contractual duties. The above-quoted portion of the Court's jury charge served as an introduction of Gas Co.'s allegations relating to alleged breach of contractual duties. Immediately following the objected-to statement, the Court took up in particularized fashion Gas Co.'s specific allegations supporting its contention of breach of contract—ranging from failure to provide a ventilator on the job to failure to enforce its safety practices concerning manholes. Thus, when read as a whole, we conclude that the charge as to Telephone Co.'s negligence based on breach of contractual duties complied with Delaware law.

■ However, we reach the contrary conclusion as to the Court's charge relating to Telephone Co.'s assumption of unspecified additional duties. In contrast with its relationship of the general to the particular as to contractual duties, the Court did not follow up its statement of Telephone Co.'s

assumption of additional duties with any particularized explanation as to just what additional duties Gas Co. contended that Telephone Co. had assumed. Instead, the Court permitted the jury to speculate as to what duties the Court was referring to and then to assume that any such "duties" were recognized and enforceable under Maryland negligence law. That was patently unfair to Telephone Co. as well as clearly contrary to substantive and procedural law and hence, error.

\* \* \*

■ We find no merit to Telephone Co.'s remaining ground for reversible error based on the Court's refusal to direct a verdict as to Telephone Co.'s alleged breach of each of several specified duties that were contractually assigned to Teal. The Court expressly found the contract to be ambiguous. Further, since the action sounded in tort, and not contract, the Contract's assignment of specific duties to Teal was not conclusive as to Telephone Co.'s liability in negligence for alleged breach of such duties. Restatement (Second) of Torts, § 416, Comment c.

\* \* \*

■ We find no merit to Telephone Co.'s contention that the Trial Court abused its discretion in permitting two officers of Gas Co. to give opinion testimony as to the responsible party for testing and ventilating the manholes for gas—based on custom in the underground construction industry.

\* \* \*

We decline to rule on Telephone Co.'s several remaining grounds for reversible error which relate to jury instructions not dealt with above. We do not thereby mean to imply approval of such instructions. On retrial, the remaining contested instructions deserve careful review so as to state the applicable law and not simply the contentions of the parties as to the law. (See pages 334, 336, 337 and 338.)

\* \* \*

REVERSED.

---

**34.** Superior Court Civil Rule 9(b) reads, in part, as follows:

"(b) *Fraud, Negligence, Mistake, Condition of Mind.*

In all averments of ... negligence ... the circumstances constituting ... negligence ... shall be stated in particularity."